UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

┌─────────────────────────────────────┐

UNITED STATES OF AMERICA


-v-                                          No. 17-cr-787-2 (RJS)
                                             <u>ORDER</u>

ERIC BROADUS,

                           Defendant.

└─────────────────────────────────────┘

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

Before the Court is Defendant Eric Broadus's request for compassionate release under the

First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), in light of the COVID-19 pandemic.  (Doc.

No. 59 ("Broadus Ltr.").)  The government opposes that request.  (Doc. No. 62 ("Gov't Ltr.").)

For the reasons set forth below, Broadus's motion is DENIED.

On September 15, 2017, Broadus and his codefendant, Derrell Fecunda, entered a jewelry

store in Manhattan with what appeared to be firearms.[1]  (Presentence Investigation Report ("PSR")

¶ 10.)  They pointed the guns at the store's employees, forced the employees to the ground, bound

their hands, and threatened to harm them unless they handed over jewelry and money.  (*Id.*;

Sentencing Tr. at 43.)  Ultimately, the pair absconded with more than $800,000 in merchandise.

(Sentencing Tr. at 31; Doc. No. 52 at 1.)  Eleven days later, they sold a small amount of the stolen

goods to another jewelry store.  (PSR ¶ 11.)  Broadus was arrested a few weeks later.  (*Id.* ¶ 16.)

---

[1] The guns – whether real or fake – were never recovered.  Thus, the government's determination that they
were merely convincing replicas is based on only the two defendants' say-so.  (Doc. No. 55 ("Sentencing
Tr.") at 10 ("The government did not recover the firearms in this case, and given the defendant's relatively
prompt guilty plea in this case, the investigation stopped.").)

On January 3, 2018, Broadus pleaded guilty, pursuant to a plea agreement, to one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951.  (Doc. No. 22.)  The PSR concluded that the advisory Guidelines range was 57 to 71 months' imprisonment.  (PSR ¶ 77.)  On August 3, 2018, the Court sentenced Broadus slightly below that range to 54 months' imprisonment.  (Sentencing Tr. at 50; Doc. No. 53 at 2.)  In doing so, however, the Court highlighted the egregiousness of Broadus's crime, the fact that Broadus's prior incarceration did not deter him from criminal endeavors, and that more than half a million dollars' worth of jewelry was still missing.  (Sentencing Tr. at 36 ("It seems to me Mr. Broadus is doing nothing to help the victims get their money back."), *id.* at 43 ("[T]his is a really violent crime . . . ."), *id.* at 47 ("[Y]ou spent about a year in jail, nearly a year in jail on a different crime[;] that was an opportunity to sort of get your act together . . . .").)  The Court also noted that a sentence below 54 months "would send the wrong message that a violent crime like this is OK . . . [and] no different than [a] nonviolent crime."  (*Id.* at 50.)

Broadus is currently being held at FCI Ray Brook in upstate New York.  Thus far, Broadus has served approximately 29 months of his sentence and is projected to be released on November 30, 2021.  (Broadus Ltr. at 1.)

On May 16, 2020, Broadus filed the instant motion seeking compassionate release because of the current COVID-19 pandemic.  The government opposes Broadus's request, arguing that he has failed to establish extraordinary and compelling reasons warranting a sentence reduction and because such a reduction would undermine the purpose of Broadus's original sentence.  (Gov't Ltr. at 3–7.)

The Court "may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Ogarro*, No. 18-cr-373 (RJS), 2020 WL 1876300, at *2

(S.D.N.Y. Apr. 14, 2020) (quoting *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020)).  Section 3582(c)(1)(A) provides one such exception, often referred to as "compassionate release."  Through that provision, a court may reduce a defendant's sentence where "extraordinary and compelling reasons warrant such a reduction," and such relief would be consistent with both the objectives of sentencing set forth in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

Here, Broadus argues that the COVID-19 pandemic, coupled with his heightened risk to the disease because of his weight, merits compassionate release.  (Broadus Ltr. at 6–9.)  The Court disagrees.

To start, the mere allegation that one is overweight, "in prison, and [that] there is a COVID-19 outbreak nationwide" is not sufficiently "extraordinary and compelling" to justify early release. *See United States v. Rodriguez*, No. 16-cr-167 (LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020).  Broadus argues that "those under 60 years old with a [body mass index ("BMI")] between 30 and 34 '[are] 2.0 and 1.8 times more likely to be admitted to acute and critical care, respectively, compared to individuals' with a BMI less than 30."  (Broadus Ltr. at 8.)  But according to Broadus's 2019 medical records – the most recent records provided to the Court – his BMI is 29.7.[2] (Gov't Ltr. at 6–7 n.1; Doc. No. 59-1 at 16 (noting that Broadus is 179.1 centimeters tall); Doc. No. 62-3 at 3 (noting that Broadus is 210 pounds).)  In addition, while the Centers for Disease Control have identified "[s]evere obesity" as a risk factor for COVID-19 complications – that is,

---

[2] And even if Broadus's BMI did fall between 30 and 34, given his young age and lack of other underlying health conditions (PSR ¶ 55 (noting that "Broadus reported to be in good physical health")), it is not clear that this increased risk would result in a high likelihood of hospitalization.  In other words, even a 100% increase in the chance of occurrence of a low-probability event does not mean that the event is likely to occur.

individuals with a BMI "of 40 or above" – it has not identified slight or moderate obesity as a high-risk comorbidity. *Coronavirus Disease 2019 (COVID-19):  Groups at Higher Risk for Severe Illness* (May 14, 2020), Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html; *see also United States v. Espinal*, No. 08-cr-242 (ARR), 2020 WL 2092484, at *3 n.1 (E.D.N.Y. May 1, 2020) ("While the Centers for Disease Control have identified '[s]evere obesity' as a risk factor for COVID-19 complications, it has not identified slight or moderate obesity as such.").  As a result, Broadus has not carried his heavy burden of demonstrating that extraordinary and compelling reasons merit a significant reduction in his sentence.  *See United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 2614764, at *2 (S.D.N.Y. May 22, 2020) (reasoning that the defendant's arguments that her preexisting health issues rendered her particularly vulnerable to COVID-19 did not merit compassionate release because, among other things, defendant's claims were not supported by the Centers for Disease Control's COVID-19 guidelines).

But even if Broadus could make this threshold showing, his motion would still fail.  Despite the existence of "extraordinary and compelling reasons" calling for compassionate release, countervailing factors can still bar such relief.  Before the Court may grant compassionate release, it must assess the section 3553(a) factors to determine "whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."  *United States v. Ebbers*, No. 02-cr-1143 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Walter*, No. 18-cr-834 (PAE), 2020 WL 1892063, at *2–3 (S.D.N.Y. Apr. 16, 2020) (denying compassionate release despite the presence of "extraordinary and compelling reasons"

because, among other things, the section 3553(a) factors did not favor early release); *United States v. Butler*, No. 19-cr-834 (PAE), 2020 WL 1689778, at *2–3 (S.D.N.Y. Apr. 7, 2020) (same).

In this case, the section 3553(a) factors disfavor compassionate release at this time. In particular, (i) "the nature and circumstances of the offense," (ii) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (iii) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," all outweigh the facts that might otherwise support Broadus's release.[3]  *See* 18 U.S.C. § 3553(a).

Releasing Broadus now, when he has served barely half of his sentence, would undermine these goals of sentencing.  Indeed, though Broadus has shown encouraging signs of rehabilitation (Broadus Ltr. at 1), his prior term of incarceration did not deter him from engaging in the instant criminal conduct (Sentencing Tr. at 47).  Significantly reducing his sentence would thus undermine its effect.  Moreover, as the Court noted at Broadus's sentencing, "anything less than [a 54-month sentence] would send the wrong message that a violent crime like this is OK."  (*Id.* at 50.)  At bottom, the Court is sympathetic to Broadus's concerns for his health and gratified by his recent progress, "but the relief he seeks is an inappropriate remedy in these circumstances."  *See United States v. Garcia*, No. 16-cr-719 (RJS), 2020 WL 2539078, at *3 (S.D.N.Y. May 19, 2020); *see also Ebbers*, 2020 WL 91399, at *7 (acknowledging that compassionate release should not "undermine the goals of the original sentence").

---

[3] Though certain of the other section 3553(a) factors are either neutral or slightly favor Broadus's release – *e.g.*, "the need for the sentence imposed . . . to provide [Broadus] with needed . . . medical care," 18 U.S.C. § 3553(a)(2) – they are far outweighed by the considerations discussed herein.

For all these reasons, Broadus's motion for compassionate release is, respectfully, DENIED.  The Clerk of Court is directed to terminate the motion pending at document number 59.


SO ORDERED.

Dated:       June 4, 2020
              New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation